**THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | | |
|---|---|---|
| **JAY OTERO,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **Civil Action** |
| **v.** | : | **No. 5:07-cv-405 (CAR)** |
| | : | |
| **GEORGE R. VITO,** *et al.*, | : | |
| | : | |
| **Defendants.** | : | |
| _____ | : | |

*AMENDED ORDER APPOINTING RECEIVER*

On Plaintiff's Motion for Appointment of Receiver (Doc. 160), and upon the withdrawal by

the Defendants of any objection to said Motion during the August 20, 2008 hearing on the Court's

Order to Show Cause, and for the reasons set forth below, it is hereby **ORDERED** that the

Defendant corporations, trusts, and business entities, to-wit:

Foot & Leg Centers of Georgia, P.C.; FLCG, Inc.; Surgical Centers of Georgia, P.C.;

A.S.A.M.I.-L.E., Inc.; GRV Irrevocable Trust; IFT, LLC; Medical Shoe Company,

LLC; L&V Properties, LLC; Tubone Irrevocable Trust; EOI, LLC; Georgia Foot &

Ankle Society, Inc.; Foot and Leg Centers of America, P.C.; SFTA, Inc.; Business

Solution Professionals, LLC; and SEBE, LLC;[1]

(hereafter "the Entities") and all assets of the same, shall be placed in receivership. Danny L. Akin,

Esq., is hereby appointed as Receiver, with all the powers and authority set forth below, until such

---

[1]The Court's original Order Appointing Receiver erroneously listed Medical Personnel Services, LLC as one of the Defendants placed in receivership. Medical Personnel Services is not owned by the Vito defendants and it has not been shown that a receivership is warranted as to that company. This Amended Order removes Medical Personnel Services from the list of entities in receivership.

time as this case is resolved and/or the Receivership is terminated by Order of the Court. This written Order arises from the Court's oral order issued on August 20, 2008, and all provisions set forth herein are issued *nunc pro tunc*, to 3:00 p.m., Wednesday, August 20, 2008.

## FACTUAL BACKGROUND

Plaintiff filed the present case in connection with his attempt to collect a judgment entered by the Court in a medical malpractice case against George Vito, D.P.M. and Foot & Leg Centers of Georgia, P.C. See <u>Otero v. Vito, *et al*.</u>, Case No. 5:04-cv-211 ("the underlying action"). On May 11, 2007, the Court entered judgment against George R. Vito ("Dr. Vito") and Foot & Leg Centers of Georgia, P.C., in the amount of $3,665,967.72. In the present action, Plaintiff contends that Dr. Vito created a number of sham corporations and business entities and engaged in fraudulent transactions to shield assets and thwart the collection of the judgment in the underlying action.

Throughout the course of this action and the post-judgment discovery in the underlying action, the Court has observed a pattern of obstruction on the part of the Defendants. Defendants have refused to respond to discovery requests, have provided non-responsive answers to discovery requests, and have filed apparently fraudulent responses to discovery requests. On April 28, 2008, in a telephone conference with counsel, the Court took note of Defendants' obstructive behavior and warned Defendants that it expected full and good faith cooperation with discovery. Defendants were directed to "open the information highway."

On May 7, 2008, the Court conducted a hearing on Plaintiff's Motion for Preliminary Injunction. Based on evidence presented at that hearing, the Court concluded that there was good cause to believe that immediate and irreparable damage would result from the further sale, transfer,

assignment, encumbrance, or other disposition or concealment of assets by the Defendants, and issued an Injunction appointing a Special Master to monitor and oversee the business operations of the Defendants and ordering Defendants, among other things, to provide detailed reports to the Special Master of all revenues and expenses. Defendants were also enjoined from making further transfers of assets or making or obtaining additional loans. At a show cause hearing on August 6, 2008, the Court found that Dr. Vito had violated the terms of the Injunction by making an unauthorized "loan" to Defendant EOI, Inc., by opening an unauthorized bank account, and by failing to provide detailed reporting of financial activities to the Special Master. Dr. Vito was found to be in contempt and ordered to be held in custody of the United States Marshal until such time as he should provide fully detailed accounts of all transactions as required in the injunction.

A second show cause hearing was conducted on August 20, 2008, with regard to Defendants John A. Vito and Richard C. Vito and their compliance with the terms of the Injunction. Both John Vito and Richard Vito testified at the hearing regarding their participation in the Defendant business entities. Based on their testimony, the Court is convinced that the Defendant corporations, trusts, and business entities are sham entities created by Dr.Vito for the express purpose of concealing assets and thwarting the collection of the judgment in this case and the claims of other creditors. John Vito and Richard Vito both testified that they had minimal recollection of the formation of the various business entities in which they are shareholders and officers, had provided no consideration for their interests in the entities, had no awareness of the purpose of those entities, and had no participation in any of the activities of those entities. They testified that they participated in the formation of the entities at the direction of their brother, Dr. Vito, who told them simply to sign the documents and return them to him. They gave Dr. Vito signature stamps to use in transacting

business for the entities, but never personally signed any checks or other documents on their behalf. This testimony, considered in conjunction with the testimony of Dr. Vito in the previous show cause hearing and with the documents submitted by the parties in this case, provides substantial reason to believe that the Defendant entities are merely the *alter ego* of Dr. Vito, and that they are being used in a continuing effort to evade the authority of this Court to enforce its judgment. Accordingly, the Court finds that the Plaintiff has a substantial likelihood of success on the merits in this case.

As a result of the continuing difficulty in obtaining information necessary to unravel the complex scheme of transactions and the failure of lesser measures such as the Injunction and the appointment of the Special Master, the Court finds that the appointment of a Receiver is necessary to preserve and protect the assets of the Defendants from further dissipation or concealment prior to the resolution of this case and the post-judgment collection efforts in the underlying case. Defendants, and Dr. Vito in particular, have demonstrated time and again that they cannot be trusted to maintain and disclose their assets or otherwise cooperate in good faith in the discovery process. In the absence of a receivership, there is no way to ensure that Plaintiff and Defendants' other creditors will have access to the assets upon which they have legal claim.

**LEGAL CONCLUSIONS**

The facts and circumstances in this case are more than sufficient to warrant the appointment of a receiver. The appointment of a receiver in a diversity action is a remedy ancillary to the enforcement of substantive rights, and as such is governed by federal law. Nat'l Partnership Investment Corp. v. Nat'l Housing Development Corp., 153 F.3d 1289, 1292 (11th Cir. 1998). A receivership is "an extraordinary equitable remedy that is only justified in extreme situations."

Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc., 999 F.2d 314, 316 (8th Cir. 1993). "A receivership is only a means to reach some legitimate end sought through the exercise of the power of a court of equity. It is not an end in itself." Kelleam v. Maryland Cas. Co. of Baltimore, Md., 312 U.S. 377, 381 (1941) (quoting Gordon v. Washington, 295 U.S. 30, 37 (1935)). As such, a court "should not appoint a receiver where the appointment is not a remedy auxiliary to some primary relief which is sought and which equity may appropriately grant." Id. One such situation in which the appointment of a receiver is a proper means to a legitimate end is when the appointment is necessary "to protect a judgment creditor's interest in a debtor's property when the debtor has shown an intention to frustrate attempts to collect the judgment." Aviation Supply, 999 F.2d at 317 (quoting Leone Indus. v. Associated Packaging, Inc., 795 F.Supp. 117, 120 (D.N.J. 1992)).

The decision to appoint a receiver requires a consideration of the equities, and there is no precise formula for determining whether appointment is warranted. Aviation Supply, 999 F.2d at 316. However, courts typically consider several factors relevant to the determination, including:

> a valid claim by the party seeking the appointment; the probability that fraudulent conduct has occurred or will occur to frustrate that claim; imminent danger that property will be concealed, lost, or diminished in value; inadequacy of legal remedies; lack of a less drastic equitable remedy; and likelihood that appointing the receiver will do more good than harm.

Id. at 316-17. All of these factors weigh in favor of the establishment of a receivership in this case.

As to the first factor, it is almost beyond dispute that Plaintiff has a valid claim to property of the Defendants in this case. Plaintiff has obtained a judgment against Dr. Vito and Foot & Leg Centers of Georgia, P.C., in the amount of nearly four million dollars. The judgment was not appealed. After diligent and costly efforts over more than a year, Plaintiff has been unable to collect a single dollar of that judgment.

As to the second factor, the Court has substantial reason to believe that fraudulent conduct has occurred and will occur to frustrate Plaintiff's claim. As noted above, the testimony and evidence submitted to the Court strongly suggests that Dr. Vito has formed various business entities that are nothing more than a sham designed to act as his *alter ego* and conceal his assets and financial transactions. There are indications that he has transferred property to these corporations or to relatives without consideration; that he has reduced his equity in real property and encumbered property subject to the judgment with liens; that he has continued to transfer assets among these entities in violation of the Court's Injunction, and that he has failed to account fully for his revenues and expenses both prior to and subsequent to the issuance of the injunction.

Evidence as to the existence of these various sham corporations and business entities and as to the inherent complexity of Dr. Vito's financial activities creates an imminent danger that property subject to the judgment of the Court in the underlying case and potentially subject to the judgment of the Court in this case will be concealed, lost, or diminished in value. Substantial amounts of income to Dr. Vito's medical practice remain unaccounted for. Plaintiff has expressed concern that substantial sums may have been transferred offshore, and testimony indicates that Dr. Vito has engaged in frequent overseas travel to locations such as Colombia and Russia. The Court is also concerned, based upon the difficulty in obtaining information as to the Entities involved in this case, that there may be other, undisclosed corporations or business entities that Dr. Vito may further use to conceal, shelter, or dissipate his assets to avoid the execution of the judgment in the underlying case.

Due to the circumstances of this case, available legal remedies and less drastic equitable remedies will not suffice to protect the interests of the Plaintiff and Defendants' creditors and to

vindicate the authority of this Court and its judgment. Defendants have demonstrated time and again that the legal remedies afforded by postjudgment discovery are completely ineffectual. They have simply refused to cooperate in the process. "Such a refusal to cooperate, even if grounded in a constitutional right, may be considered in determining whether to appoint a receiver." Aviation Supply, 999 F.2d at 317. See also United States v. Ianniello, 824 F.2d 203, 208 (2nd Cir. 1987). In this case, as in Aviation Supply, there is ample evidence of "a pattern of nondisclosure and false disclosure, followed by transfer to avoid a tenacious judgment creditor." Id. The Court has tried less drastic equitable remedies, such as the issuance of an Injunction and the appointment of a Special Master, but these measures have failed to bring Plaintiff any closer to unraveling the complicated web of entities and transactions woven by Defendants.

Finally, the Court finds it likely that the appointment of a receiver is more likely to do good than harm. The legitimate business activities of the Defendants can continue to take place under the Receiver's supervision. The Receiver will be empowered to manage and maintain all assets to preserve them for the benefit of all parties. He will also be empowered to take possession of all financial records in order to locate and recover assets that may have been concealed, transferred, or dissipated. He will be required to keep records of all his activities and be responsible to the Court. Any activities of the Receiver that the parties find to be objectionable can be brought to the attention of the Court. The receivership is temporary and will be dismissed when the litigation in this case is fully resolved. These factors ensure that the Receiver will do more good than harm in this case.

## POWERS OF THE RECEIVER

For the reasons set forth above, the Court hereby appoints Danny L. Akin, Esq., to serve as Receiver as to the following Entities:

Foot & Leg Centers of Georgia, P.C.; FLCG, Inc.; Surgical Centers of Georgia, P.C.; A.S.A.M.I.-L.E., Inc.; GRV Irrevocable Trust; IFT, LLC; Medical Shoe Company, LLC; L&V Properties, LLC; Tubone Irrevocable Trust; EOI, LLC; Georgia Foot & Ankle Society, Inc.; Foot and Leg Centers of America, P.C.; SFTA, Inc.; Business Solution Professionals, LLC; and SEBE, LLC.

The Receiver shall act as an officer of the Court to operate the business activities of the Entities with the primary purpose of promoting their orderly and efficient administration for the benefit of their creditors, including the Plaintiff in this case.

In pursuit of this goal, the Receiver shall have all powers, authorities, rights and privileges heretofore possessed by the officers, directors, managers, trustees, and/or general and limited partners of the Entities under applicable state and federal law, and under any trust agreement, and charter and/or by-laws of said Entitites, in addition to all powers and authority of a receiver at equity, and all powers and authority conferred upon the Receiver by the provisions of 28 U.S.C. § 754. The powers of any present trustees, directors, officers, managers of the Entities are hereby suspended. Such persons and entities shall have no authority with respect to the Entities' operations or assets, except to the extent as may hereafter be expressly granted by the Receiver. The Receiver shall assume and control the operation of the Entities and shall pursue and preserve all of their claims. Consistent with his general powers set forth above, the Receiver shall have the following specific powers:

1. To take all necessary steps to gather and take immediate possession of all property and assets of the Entities, including real property, personal and moveable property, bank accounts, financial instruments, computers, intellectual property, or any other property;

2. To take all necessary steps to gather and take possession of any and all assets of the Entities located outside the jurisdiction of the Court and to return them to the United States, to the full extent permitted by the laws of any foreign state in which such assets are found;

3. To enter onto the premises of the Entities and to have full and ready access to all offices, facilities, plants, or other places of business of such entities;

4. To take possession of and have full and ready access to all books, records, documents, or instruments relating to the Entities, however stored, whether in paper or digital form;

5. To obtain information relating to all financial accounts, real property, and personal assets in the name of or for the benefit of the Entities, within this Court's jurisdiction and abroad;

6. To sell or otherwise dispose of in a commercially reasonable manner any property or assets of the Entities;

7. To sell, dissolve, or otherwise dispose of in a commercially reasonable manner any of the Entities, as he deems necessary to the orderly and efficient operation of the Entities and maximum preservation of their value for the benefit of their creditors, after notice to and approval of the Court;

8. To pay the operating expenses of the Entities;

9. To collect any accounts receivable from any debtor of the Entities;

10. To enter into contracts on behalf of any of the Entities;

11.     To hire or discharge employees of the Entities and to employ such personnel, including attorneys, accountants, or consultants, as he may deem necessary to effectuate the operation of the receivership and to compensate such personnel using receivership funds upon such terms as the Receiver shall deem reasonable in light of the usual fees and billing practices and procedures of such personnel, without prior Court approval;

12.     To have signature authority over and ownership of the financial accounts of all the Entities, wherever situated;

13.     To open new banking or financial accounts on behalf of any of the Entities; and

14.     To file suit on behalf of any of the Entities in any United States District Court or in any the court of any State which has jurisdiction;

In the exercise of his powers and duties pursuant to this Order, the Receiver is directed to file copies of this Order and the Amended Complaint in this action in the United States District Court for each district in which any property of the Entities is located, **within ten (10) days of the date of this Order**, as required by 28 U.S.C. § 754. The Receiver is further directed to maintain complete and orderly records of all his activities and to provide reports of such activities to the Court as requested.

The Receiver shall be compensated for his services from the assets of the Entities at the rate of $300.00 per hour, subject to the prior approval of the Court. He shall submit his bills to the Court on a monthly basis. He will not be required to post a bond.

**SO ORDERED**, this 25th day of August, 2008.

S/ C. Ashley Royal
C. ASHLEY ROYAL
UNITED STATES DISTRICT COURT

chw